Steve Herbert Hofsaess
c/o Christopher G. Gellner, Esq.
528 South Casino Center Boulevard, Third Floor
Las Vegas, Nevada 89101
(702) 396-8281
Debtor in Proper Person

## UNITED STATES BANKRUPTCY COURT DISTRICT OF NEVADA

IN RE:                                ) BK-S-08-23761-bam
                                      ) CHAPTER 11
STEVE HERBERT HOFSAESS    ) Date of Hearing: August 11, 2009
                                      ) Time of Hearing: 9:30 p.m.
                Debtor.         )

### DEBTOR'S PROPOSED SECOND AMENDED PLAN OF REORGANIZATION

I.
**DEFINITIONS**

1. "Debtor" shall mean Steve Herbert Hofsaess.

2. "Plan" shall mean this plan of reorganization in its present form or as it may be amended or supplemented.

3. "Court" shall mean the United States Bankruptcy Court for the District of Nevada, including the Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

4. "Claim" shall mean a duly listed or timely filed claim which is allowed and ordered paid by the Court.

5. "Effective Dates" shall be the date on which the Order confirming the Plan becomes final and non-appealable.

6. "Date of Distribution" shall be that date upon which the creditors are approved for payment in accordance with the Plan.

II.
**CLAIMS**

A. **Classification of Claims**

Claims and interests of creditors are classified as follows:

**CLASS I: ADMINISTRATIVE CREDITORS**

All expenses of administration incurred by the Debtor during bankruptcy including any

outstanding fees to the U.S. Trustee under 28 USC § 1930.

**CLASS II: CURRENT OPERATION CREDITORS**

Debts incurred by the Debtor in the ordinary course of business after filing bankruptcy which are not delinquent.

**CLASS III: PRIORITY TAX CLAIMS**

Tax claims of the Internal Revenue Service taxing authorities to the extent they are entitled to priority under 11 USC § 507(a)(b). The Debtor does not owe any priority taxes.

**CLASS IV: SECURED CREDITORS**

This class consists of creditors holding a security interest in or liens on the Debtor's property. The claims held by creditors listed in Schedule D of the Debtor's Schedules are secured.

**CLASS IV(A): THE FIRST DEED OF TRUST LOAN ON THE HOME AT 3808 FAIRWAY CIRCLE, LAS VEGAS, NEVADA 89108 HELD BY BANK OF AMERICA**

The Debtor's residence at 3808 Fairway Circle Avenue has a value of $295,000.00 as of March 4, 2009, yet a first deed of trust with a balance of approximately of $327,000.00 and a second deed of trust with a balance of approximately $174,000.00 as of the Petition date. The second deed of trust held by Bank of America will be removed from or stripped off the property and treated as a wholly unsecured claim. The first trust deed held by Bank of America will be paid in full by the Debtor resuming regular monthly payments of $2,365.00 on September 1, 2009 and paying off the arrearages of approximately $23,650.00 over 60 months at the rate of $394.00 per month beginning on the effective date.

**CLASS IV(B): THE SECURED PORTION OF THE FIRST DEED OF TRUST LOAN ON THE HOME AT 5952 VIZZI COURT, LAS VEGAS, NEVADA 89131 HELD BY BANK OF AMERICA FKA COUNTRYWIDE HOME LOANS**

The home at 5952 Vizzi Court has a value as of March 4, 2009 of $290,000.00, yet a first deed of trust with a balance of approximately $528,000.00, and a second a balance of approximately $145,000.00. The second held by First Horizon will be removed from or stripped off the property

1  and treated as a wholly unsecured claim. The first held by Bank of America/Countrywide claim will
2  be bifurcated into two claims -- a secured claim equal to the value of the collateral, or $265,000.00
3  and an unsecured claim equal to the remainder of the obligation to Bank of America/Countrywide
4  or $238,000.00. The secured portion of the loan will be made into a 30-year amortized mortgage,
5  with a fixed interest rate of 5.5% per annum, payable at the rate of $1,646.60 per month beginning
6  on the effective date and continuing on the same day of each and every month thereafter for 360
7  months.

**CLASS IV (C): THE SECURED PORTION OF THE FIRST DEED OF TRUST ON THE HOME AT 6165 SMARTY JONES AVENUE, LAS VEGAS, NEVADA 89131 HELD BY BANK OF AMERICA FKA COUNTRYWIDE HOME LOAN**

11  The home at 6165 Smarty Jones Avenue has a value of $290,000.00 as of March 4, 2009,
12 yet a first deed of trust owed to Indymac Federal Bank with a balance of approximately $477,000.00
13 and a second owed to GMAC Mortgage with a balance of approximately $90,000.00. The second
14 will be removed from or stripped off the property, and treated as a wholly unsecured claim. The
15 first will be bifurcated into two claims, a secured claim equal to the value of the collateral, or
16 $209,000.00, and an unsecured claim equal to the remaining obligation to Indymac Federal Bank,
17 or $187,000.00. The secured portion of the loan will be made into a 30-year amortized mortgage,
18 with a fixed interest rate of 5.5% per annum, payable at the rate of $1,646.60 per month beginning
19 on the effective date and continuing on the same day of each and every month thereafter for 360
20 months.

**CLASS IV(D): THE SECURED PORTION OF THE FIRST DEED OF TRUST LOAN ON THE HOME AT 8906 HOUSTON RIDGE, LAS VEGAS, NEVADA 89178 HELD BY BANK OF AMERICA LOAN**

24  The home at 8906 Houston Ridge Avenue has a value of $135,000.00 as of March 4, 2009,
25 yet a first deed of trust owed to Bank of America with a balance of $260,000.00 and a second or
26 home equity loan also owed to Bank of America with a balance of approximately $100,000.00. The
27 second deed of trust will be removed from or stripped off the property and treated as a wholly

unsecured claim. The first will be bifurcated into two claims -- a secured claim equal to the value of the collateral, or $135,000.00, and an unsecured claim equal to the remaining of the obligation, or $125,000.00. The secured portion of the loan will be made into a 30-year amortized mortgage, with a fixed interest rate of 5.5% per annum, payable at the rate of $766.52 per month beginning on the effective date and continuing on the same day of each and every month thereafter for 360 months.

**CLASS IV (E): THE SECURED PORTION OF THE FIRST DEED OF TRUST ON THE CONDOMINIUM AT 230 EAST FLAMINGO ROAD, #415, LAS VEGAS, NEVADA 89169 HELD BY AMERICA'S SERVICING COMPANY (ASC)**

The home at 230 East Flamingo Road, #415 has a value as of March 4, 1009 of $110,000, yet a first deed of trust in favor of America's Servicing with a balance of $360,000.00 and a second owed to Countrywide Bank in the amount of $148,000.00. The second will be removed or stripped off the property, and treated as a wholly unsecured claim. The first will be bifurcated into two claims, a secured claim equal to the value of the collateral, or $110,000.00, and an unsecured claim equal to the remaining obligation owed to America's Servicing Company, or $250,000.00. The secured portion of the loan will be made into a 30-year amortized mortgage, with a fixed interest the rate of 5.5% per annum, payable at the rate of $624.57 per month beginning on the effective date and continuing on the same date of each and every month thereafter for 360 months.

**CLASS IV (F): THE SECURED PORTION OF THE FIRST DEED OF TRUST ON THE HOME AT 5824 AMBER STATION AVENUE, LAS VEGAS, NEVADA 89131 HELD BY AMERICA'S SERVICING COMPANY**

The home at 5824 Amber Station Avenue has a value of $230,000.00 as of March 4, 2009, yet a first deed in favor of America's Servicing Company with a balance of approximately $286,000.00 and a second owed to Merrill Lynch in the amount of approximately $165,000.00. The second will be removed or stripped off the property, and treated as a wholly unsecured claim. The first will be bifurcated into two claims, a secured claim equal to the value of the collateral, or $230,000.00, and an unsecured claim equal to the remaining obligation owed to America's Servicing

in the amount of $56,000.00. The secured portion of the loan will be made into a 30-year amortized mortgage, with a fixed interest rate of 5.5% per annum, payable at the rate of $1,305.92 per month beginning on the effective date and continuing on the same day each and every month thereafter for 360 months.

### CLASS IV (G): THE SECURED PORTION OF THE FIRST DEED OF TRUST ON THE CONDOMINIUM HOME AT 11855 PORTINA DRIVE, #2011, LAS VEGAS, NEVADA 89138 HELD BY WASHINGTON MUTUAL

The condominium home at 11855 Portina Drive, #2011 has a value of $140,000 as of March 4, 2009, yet a first deed of trust on the property in favor of Washington Mutual/J.P. Morgan Chase with a balance of approximately $294,000.00. The second will be removed from or stripped of the property, and treated as a wholly unsecured claim. The first will be bifurcated into two claims, a secured claim equal to the value of the collateral, or $140,000.00, and an unsecured claim equal to the remaining obligation owed to Washington Mutual, or $154,000.00. The secured portion of the loan will be made into a 30-year amortized mortgage, with a fixed interest rate of 5.5% per annum, payable at the rate $794.91 per month beginning on the effective date and continuing on the same day of each and every month thereafter for 360 months.

### CLASS IV (H): THE SECURED PORTION OF THE FIRST DEED OF TRUST ON THE HOME AT 6159 VILLA DE PICASSO AVENUE, LAS VEGAS, NEVADA 89131 HELD BY BANK OF AMERICA FKA COUNTRYWIDE HOME LOANS

The home at 6159 Villa De Picasso Avenue has a value of $345,000.00 as of March 4, 2009, yet a first deed of trust in favor of Bank of America FKA Countrywide Home Loans in the approximate amount of $499,000.00, and a second deed of trust, or home-equity loan, owed to Merrill Lynch in the amount of $80,000.00. The second will be removed from or stripped off the property and treated as a wholly unsecured claim. The first will be bifurcated into two claims, a secured claim equal to the value of the collateral, or $345,000.00, and an unsecured claim equal to the remaining obligation of $154,000.00. The secured portion of the loan will be made into a 30-year amortized mortgage with a fixed interest rate of 5.5% per annum, payable at the rate of

$1,958.88 per month beginning on the effective date and continuing on the same day of each and every month thereafter for 360 months.

### CLASS IV (I):  THE SECURED CLAIM OF DCFS USA, LLC, AKA CHRYSLER FINANCIAL ON THE 2006 DODGE RAM 250 PICK-UP TRUCK

The balance of the loan owned on the vehicle was, according to the creditor, $21,635.65 on the date the BK Petition was filed.  During the course of the Bankruptcy case, this secured creditor filed a Motion To Lift Stay and the parties tried to negotiate a redemption amount for the vehicle.  When they were unable to do so, the Debtor, Mr. Hofsaess, began to make adequate-protection payments each month beginning in February, 2009.  This creditor will be paid current replacement value of the vehicle, which is estimated to be $11,000.00, with 7% interest thereon, payable in equal monthly payments of $339.65 for 36 months.  The remaining unsecured portion of the claim, or $10,635.65, will be paid at 5% with general, unsecured creditors of Class V.

If the Debtor and the creditor cannot reach a mutually-agreeable value for the vehicle, the Debtor reserves the right to return the truck to the creditor for its disposition under State law.

### CLASS V:  THE PRE-PETITION GENERAL UNSECURED CLAIMS OF CREDIT CARD AND OTHER GENERAL UNSECURED CREDITORS

This class consists of  credit card creditors and other general unsecured creditors (14 in number) whose claims of $145,431.00 are listed in Amended Schedule F filed 4-1-09.  This class also consists of the unsecured portion of DCFS USA, LLC's claim on the 2006 Chrysler Ram Pick up of $10,635.65.  The total claims in this class are $156,066.65.

### CLASS VI:  THE UNSECURED SECOND DEED OF TRUST CLAIMS

This class consists of the wholly, unsecured claims represented by second deeds of trust on the Debtor's homes at 3806 Fairway Circle, 5952 Vizzi Court, 6165 Smarty Jones, 5906 Houston Ridge, 230 East Flamingo Road, #415, 5824 Amber Station and 5159 Villa De Picasso Avenue, which total to approximately $902,000.00.

///

///

**CLASS VII:  THE UNSECURED PORTIONS OF THE FIRST DEED OF TRUST CLAIMS**

This class consists of the unsecured portions of the first deed of trust claims on 5952 Vizzi Court, 6165 Smarty Jones, 5906 Houston Ridge, 230 E. Flamingo Road, #415, 5824 Amber Station, 5159 Villa De Picasso Avenue and 11855 Portina Drive, #2011, which total to approximately $1,164,000.00.

### III.
### PROVISIONS FOR SATISFYING CLAIMS

(A)  **CLASS I:  ADMINISTRATIVE CLAIMS**

Claims of all Class I creditors will be paid in cash and in full after confirmation and on the date of distribution.

(B)  **CLASS II:  CURRENT OPERATION CREDITORS**

The claims of all Class II creditors shall be assumed by the reorganized debtor and shall be paid in the ordinary course of business.

(C)  **CLASS III:  PRIORITY TAX CLAIMS**

Claims of Class III creditors shall be paid in full after confirmation on the effective date. It is believe that there are no Class III creditors.

(D)  **CLASS IV(A): THE DEBTOR'S PRINCIPAL RESIDENCE**

Bank of America's first deed of Trust on the Debtor's home at 3808 Fairway Circle shall be paid in full.  The Debtor shall begin regular monthly payments of $2,365.00 per month in September, and will pay off the arrearages of approximately $23,650 by equal monthly payments of $394.00 for 60 months, beginning on the effective date of the Plan.

(E)  **CLASSES, IV(B), IV(C), IV(D),IV (E), IV (F), IV (G), AND IV (H)**

Secured creditors in these classes shall receive new 30-year amortized mortgages, at 5.5% interest per annum, equivalent to the value of each property, which shall be paid monthly by the Debtor as described in Section II above.  The Order of Confirmation shall modify the current loan documents to change the principal balance, interest rate, term of the loan, and monthly payment

amounts. The default terms and State law remedies for default contained in the current loan documents will remain unchanged.

**(F):** **CLASS IV (I): THE SECURED CLAIM OF DCFS USA, LLC AKA CHRYSLER FINANCIAL**

DCFS, USA, LLC shall receive a lien on the vehicle for $11,000.00, its current replacement value, that will be paid over 36 months at 7% interest by equal monthly payments of $339.65. The secured portion of this claim, or $10,635.65, shall be paid through Class V. The Debtor reserves the right to return the vehicle to the creditor if a mutully-agreeable value for the vehicle cannot be reached with the creditor.

**(G)** **CLASS V: UNSECURED CREDIT CARD AND OTHER GENERAL UNSECURED CLAIMS**

These creditors will be paid at 5% of their allowed claims without interest over 8 years. Any creditor may elect to be paid in full by receiving a one-time cash payment of 3% of its allowed claim within 30 days of the effective date of the Plan.

**(H)** **CLASS VI: UNSECURED CREDITORS HOLDING SECOND DEEDS OF TRUST**

This class of creditors shall be paid 5% of their allowed claims without interest over 8 years.

**(I)** **CLASS VII: THE UNSECURED PORTION OF FIRST DEED OF TRUST CLAIMS**

This class of creditor shall be paid 5% of their allowed claims without interest over 8 years.

**(J)** **DETERMINATION OF UNIMPAIRED CLAIMS**

The Creditors in Class IV A) are unimpaired. Creditors in Classes IV(B), IV (B), (C), (D), (E), (F), (G), (H), and (I) are impaired, as are creditors in Classes V, VI, and VII.

**IV.**
**MEANS FOR EXECUTION OF THE PLAN**

1. The funds necessary to implement the Plan shall be provided from funds on deposit in the Debtor-In-Possession Account at Wells Fargo, the Debtor's income from Desert Poolscape,

8

LLC, income from the Debtor's rental properties, or any other means authorized by Section 1123 (A) or 1129(A) of the Code.

    2.    Distribution Date: Except as herein provided, property to be distributed under this Plan shall be distributed on or as soon as practicable after the effective date.

    3.    Upon confirmation, the Debtor shall be revested with their assets, subject only to outstanding liens which are not modified or avoided by the Debtor under the provisions of Title 11 of the United States Code, and entitled to manage their affairs without further Order of Court.

## V.
## REPRESENTATIONS AND DISCLOSURE STATEMENT

To the extent that the disclosure statement contains representations of fact and/or the Debtor's intention with respect to the means and manner of execution this Plan, the same is incorporated herein by reference.

## VI.
## EFFECT OF CONFIRMATION

### A. **LEGAL EFFECT**

The legal effect of confirmation of the Plan of Reorganization is set forth in 11 U.S.C. § 1141 which provides, among other things, that:

    1.    With certain exceptions, the provisions of the confirmed Plan bind the Debtor and all other parties whose rights are impaired and whether or not any such party has accepted the Plan.

    2.    All property of the estate of the Debtor is vested in the Reorganized Debtor.

    3.    The property dealt with by the Plan is free and clear of all claims and interests of creditors.

    4.    Confirmation and successful consummation of the Plan discharges the Debtor from any debt that arose before the date of confirmation and certain other debts.

### B. **PROCEDURAL AFFECT**

The Plan allows the Debtor to keep property owned by the Debtor, subject to encumbrances thereon, as provided for herein, and allows the Debtor a period of time in which he may properly pay his debts.

# VII.
# RESERVATION OF RIGHTS

1. Notwithstanding the confirmation of this Plan of Reorganization, the Debtor shall retain and remain in possession after confirmation of his Plan of all causes of action he may have under the United States Bankruptcy Code, and the Debtor shall be authorized to prosecute such actions fully and completely.

2. Upon confirmation, the reorganized Debtor shall be revested with his assets, subject only to outstanding liens created and/or recognized by this Plan, and shall be entitled to manage their affairs without further order of Court.

# VIII.
# MODIFICATION OF PLAN

The Debtor may propose amendments or modifications of the Plan at any time prior to confirmation, with leave of the Court upon notice to creditors. After confirmation, the Debtor may, with approval of the Court and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan, or in the order of confirmation, in such manner as may be necessary to carry out the purposes and effects of this Plan.

# IX
# JURISDICTION OF THE COURT

The Court shall retain jurisdiction until this Plan has been fully consummated, including, but not limited to, the following purposes:

1. The classification of the claim of any creditor and the reexamination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to the creditor's claims. The failure by the Debtor to object to, or to examine any claim for the purposes of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or reexamine the claim in whole or in part.

2. Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to

action pending as of the date of confirmation between the Debtor and any other party, including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code. In addition, the Court's powers shall include, but not be limited to, the power to hear, determine and approve settlements of such litigation; appoint, designate or approve a disbursing agent or agents to receive the proceeds of such claims subject to further order of the Court; hear, determine and allow the payment of expenses incidental to such claims; and to make such other orders and determinations as may be reasonable and proper in the premises.

3. The correction of any debts, the curing of any omission, or the reconciliation of any inconsistency in the Plan or the order of confirmation as may be necessary to carry out the purposes and intents of this Plan.

4. The modification of the Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

5. To enforce and interpret the terms and conditions of this Plan.

6. Entry of orders, including injunctions, necessary to enforce the title, and the rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights, and powers as this Court may deem necessary.

7. The Court shall, in addition, retain jurisdiction to determine whether a default has occurred under the Plan, and may make such orders as the Court deems necessary to enforce the provisions of the Plan including, but not limited to, ordering a modification of the Plan or conversion of the case to Chapter 7 of the Bankruptcy Code or other such relief as may be appropriate.

8. Entry of an order concluding and terminating this case.

## X.
## EFFECT OF SUCCESSFUL CONSUMMATION

A successful completion of all payments under this Plan shall result in a discharge of each and every claim provided for by the Plan.

DATED this 7th day of August, 2009.

/s/ Steve Herbert Hofsaess  
Steve Herbert Hofsaess  
Debtor In Proper Person

11